No. 12-17808

---

# In The United States Court of Appeals
# for the Ninth Circuit

---

GEORGE K. YOUNG, JR.,

Plaintiff-Appellant,

v.

STATE OF HAWAII; NEIL ABERCROMBIE, in his capacity as Governor of the State of Hawaii; DAVID MARK LOUIE I, Esquire, in his capacity as State Attorney General; COUNTY OF HAWAII, as a sub-agency of the State of Hawaii; WILLIAM P. KENOI, in his capacity as Mayor of the County of Hawaii; HILO COUNTY POLICE DEPARTMENT, as a sub-agency of the County of Hawaii; HARRY S. KUBOJIRI, in his capacity as Chief of Police; JOHN DOES, 1-25; JANE DOES, 1-25; DOE CORPORATIONS, 1-5; DOE ENTITIES, 1-5,

Defendants-Appellees.

---

Appeal from a Judgment of the United States District Court
for the District of Hawaii
The Hon. Helen W. Gillmor, District Judge
Case No. 1:12-cv-00336-HG-BMK

---

### *AMICUS CURIAE* BRIEF OF SECOND AMENDMENT FOUNDATION, INC., IN OPPOSITION TO PETITION FOR REHEARING *EN BANC*

David G. Sigale (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel: 630.452.4547 / Fax: 630.596.4445
dsigale@sigalelaw.com
Attorney for *amicus curiae*
Second Amendment Foundation, Inc.

## F. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Second Amendment Foundation, Inc. has no parent corporation, and no publicly held company owns 10% or more of its stock.

                /s/ David G. Sigale
                David G. Sigale
                Attorney for *amicus curiae*
                Second Amendment Foundation, Inc.

## TABLE OF CONTENTS

F. R. App. P. 26.1 Corporate Disclosure Statement ……………………... ii

Table of Contents ………………………………………………………. iii

Table of Authorities …………………………………………………… v

Interest of *Amicus Curiae* ……………………………………………… 1

Introduction …………………………………………………………… 3

Argument………………………………………………………………… 5

I.   THE ENFORCEMENT OF H.R.S. § 134-9(a) VIOLATES THE
     PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL
     DUE PROCESS RIGHTS …………………………………….....5

II.  THE PUBLIC CARRY OF FIREARMS FOR SELF-DEFENSE IS
     A LIBERTY INTEREST WHICH ENTITLES THE PLAINTIFF
     TO DUE PROCESS PROTECTIONS ………………………… 7

III. PLAINTIFF MEETS THE ELEMENTS OF THE *MATHEWS*
     TEST ……………………………………………………………… 11

     1.   Plaintiff's private interest in the public carry of firearms is
          negatively affected by the official action …………………… 11

     2.   The risk of an erroneous deprivation of such interest
          through the procedures used is enormous, and the
          probable value of additional or substitute procedural
          safe-guards is great ………………………………………… 12

     3.   The Government's interest, including the function
          involved and the fiscal and administrative burdens
          that the additional or substitute procedural
          requirement would entail, is minimal or non-existent …… 17

CONCLUSION ................................................................. 23

iv

# TABLE OF AUTHORITIES

## Cases

*Board of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ....................................................................... 5

*Chief of Police of the City of Worcester v. Holden*,
470 Mass. 845 (Mass. 2015) ........................................................ 21

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ......................................................... 3, 7, 8, 11

*Drake v Filko*,
724 F.3d 426 (3d Cir. 2013) ........................................................... 9

*Duncan v. Louisiana*,
391 U.S. 145 (1968) ....................................................................... 5

*Firearms Records Bureau v. Simkin*,
466 Mass. 168 (Mass. 2013) .......................................... 18, 19, 20, 21

*Fisher v. Kealoha*,
855 F.3d 1067 (9th Cir. 2017) ................................................. 21, 22

*Gilbert v. Homar*,
520 U.S. 924 (1997) ....................................................................... 7

*Gadomski v. Tavares*,
113 A.3d 387 (R.I. 2015) ..............................................................14

*Gould v. Morgan*,
2018 U.S. App. LEXIS 31129 (1st Cir. 2018) ................................. 21

*Hewitt v. Grabicki*,
794 F.2d 1373 (9th Cir. 1986) ........................................................ 6

v

*Kachalsky v. Cty. Of Westchester*,
701 F.3d 81 (2d Cir. 2012) ............................................................. 9

*Largent v. Texas*,
318 U.S. 418 (1943) ..................................................................... 12

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................... *passim*

*McDonald v. City of Chicago*,
130 S.Ct. 3010 (2010) ........................................................ 1, 3, 7, 11

*Moore v. Madigan*,
702 F.3d 933 (7th Cir. 2012) ...................................................... 1, 9

*Mosby v. Devine*,
851 A.2d 1031 (R.I. 2004) ........................................................... 15

*Muscarello v. United States*,
524 U.S. 125 (1998) ................................................................... 8

*Nozzi v. Housing Authority of the City of Los Angeles*,
806 F.3d 1178 (9th Cir. 2015) ............................................. 6, 11, 16

*Obergefell v. Hodges*,
135 S.Ct. 2584 (2015) ..................................................................5

*Payton v. New York*,
445 U.S. 573 (1980) ................................................................... 8

*Peruta v. County of San Diego*,
824 F.3d 919 (9th Cir. 2016) (*en banc*) ...................................... 3, 9, 16

*Silverman v. United States*,
365 U.S. 505 (1961) ................................................................... 8

*St. Joseph Stock Yards Co. v. United States*,
298 U.S. 38 (1936) ......................................................... 17

*Staub v. City of Baxley*,
355 U.S. 313 (1958) ....................................................... 14

*Woollard v. Gallagher*,
712 F.3d 865 (4th Cir. 2013) ......................................... 9

*Wrenn v. District of Columbia*,
864 F.3d 650 (D.C. Cir. 2017) .....................................1, 9

*Young v. Hawaii*,
896 F.3d 1044 (9th Cir. 2018) .......................... 3, 9, 12, 21

*Young v. Hawaii*,
911 F.Supp.2d 972 (D.Haw. 2012) ............................. 6, 10

## Constitutional Provisions

U.S. Const. Amend. II ......................................... *passim*

U.S. Const. Amend. XIV ...................................... *passim*

## Statutes, Rules and Ordinances

H.R.S. § 134-9(a) ........................................... 10, 12, 17

## Other Authorities

1 St. George Tucker, *Blackstone's Commentaries: With Notes of Reference to the Constitution and Laws of the Federal Government of the United States; and of the Commonwealth of Virginia* app. n.D. (Phil., William Young Birch & Abraham Small 1803)) ...................... 10

2 William Blackstone, *Commentaries on the Laws of England* (Edward Christian ed., 1795) ......................................... 9

4 William Blackstone, *Commentaries on the Laws of England in Four Books*, vol. 2 (Sharswood, 1753) ............................................. 22

## *Amicus Curiae* Brief of Second Amendment Foundation, Inc., in Opposition to Petition for Rehearing *En Banc*

### Interest of *Amicus Curiae*[1]

Founded in 1974, Second Amendment Foundation, Inc. ("SAF") is a non-profit tax-exempt educational foundation, with over 650,000 members and supporters throughout the United States. Through its legal action programs, SAF is a leading defender of Second Amendment rights. Among its notable achievements, SAF prevailed before the United State Supreme Court in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), establishing that the Fourteenth Amendment applies the right to keep and bear arms as against states and localities. SAF's significant legal victories also include (but are not limited to) *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012); *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017); *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011);

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person, other than *amicus curiae*, its members or its counsel, contributed money that was intended to fund the

and *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). Additionally, SAF sponsors and assists landmark civil rights cases where it cannot appear directly as a plaintiff, *see*, *e.g.*, *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (*en banc*), and frequently participates as an *amicus curiae* before the United States Supreme Court, the lower federal courts, and state courts.

SAF has significant expertise and unique insight relating to issues raised by the petition which merit further development. SAF and its members also have a direct interest in the outcome of this matter. The panel decision directly impacts the status of Second Amendment rights, and affects the lives of law-abiding, responsible citizens who wish to access their fundamental right to keep and bear arms.

This case is but the latest of many addressing the issue of the public carrying of firearms for self-defense purposes. Some Courts, like the panel majority in this case, correctly view this a right equal to that of possessing a firearm in one's home. Others view such a right as

---

preparation or submission of this brief.

2

lesser or non-existent. SAF is well-positioned to assist the Court in elucidating how the panel majority was correct and its decision requires no further review. Accordingly, SAF respectfully moves this Court to accept the filing of the attached *amicus curiae* brief in opposition to an *en banc* rehearing.

## INTRODUCTION

*Amicus* agrees with the panel majority both that the core Second Amendment right includes "the right to carry a firearm openly for self-defense[,]" *Young v. Hawaii*, 896 F.3d 1044, 1070 (9th Cir. 2018), and that a "limitation on the open carry of firearms to those 'engaged in the protection of life and property' violates the core of the Second Amendment and is void." *Id.* at 1071. The panel opinion is consistent with both Supreme Court precedent (*See District of Columbia v. Heller*, 554 U.S. 570 (2008); *See also McDonald v. City of Chicago*, 561 U.S. 42 (2010)), and Circuit precedent (*See Peruta v. County of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (*en banc*) ("There may or may not be a Second Amendment right for a member of the general public to carry a

3

firearm openly in public. The Supreme Court has not answered that question, and we do not answer it here.").

For those reasons, the panel majority was entirely correct in its analysis, and *en banc* review in this case should be denied. However, Plaintiffs raised other arguments as well, which the panel majority did not need to address (having ruled in favor of Plaintiff's Second Amendment argument), and the panel dissent chose not to address, notwithstanding voting against the Second Amendment right. But if the dissent had addressed the Plaintiff's remaining arguments, then Plaintiff would have prevailed as well, and the offending statutes would have been stricken, because the Hawaii regulatory scheme for the public carrying of firearms also violates Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution.

Since Plaintiffs also had a meritorious Fourteenth Amendment Due Process claim in addition to the meritorious Second Amendment claim, *en banc* review in this case should not be granted.

ARGUMENT

## I. THE ENFORCEMENT OF H.R.S. § 134-9(a) VIOLATES THE PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS.

"Under the Due Process Clause of the Fourteenth Amendment, no State shall 'deprive any person of life, liberty, or property, without due process of law.' The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2697 (2015) (citing *Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968)).

The Due Process Clause "imposes procedural constraints on governmental decisions that deprive individuals of liberty or property interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972). "A legitimate claim of entitlement is created 'and [its] dimensions are defined by existing rules or understandings

5

that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* at 577.

The District Court correctly noted that in assessing a Fourteenth Amendment procedural due process claim, "[f]irst, a court must determine whether a liberty or property interest exists entitling a plaintiff to due process protections. If a constitutionally protected interest is established, courts employ a three-part balancing test to determine what process is due." *Young v. Hawaii*, 911 F.Supp.2d 972, 993 (D.Haw. 2012) (citing *Hewitt v. Grabicki*, 794 F.2d 1373, 1380 (9th Cir. 1986)). *See also Nozzi v. Housing Authority of the City of Los Angeles*, 806 F.3d 1178, 1190-1191 (9th Cir. 2015).

The well-settled balancing test was explained in *Mathews*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

6

> and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. *See also Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997).

"Due process 'is not a technical conception with a fixed content unrelated to time, place[,] and circumstances[;]' instead, it 'is flexible and calls for such procedural protections as the particular situation demands.' *Mathews*, 424 U.S. at 334 (citations omitted).

## II. THE PUBLIC CARRY OF FIREARMS FOR SELF-DEFENSE IS A LIBERTY INTEREST WHICH ENTITLES THE PLAINTIFF TO DUE PROCESS PROTECTIONS.

Viewing the first element, the panel majority correctly determined a liberty interest in the bearing of arms for self-defense outside of the home. *Heller* was in no way limited in its holding to the home. Although "the need for defense of self, family, and property is *most acute*" in the home, *Heller*, 554 U.S. at 628 (emphasis added), and the Second Amendment right is secured "*most notably*" for self-defense within the home," *McDonald*, 561 U.S. at 781 (emphasis added), the

7

Second Amendment is no different from other rights.  For example, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," *Payton v. New York*, 445 U.S. 573, 585 (1980).  *See also Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the [Fourth Amendment's] very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion").  However, no one would suggest that a person's Fourth Amendment rights do not extend outside her home.

Indeed, the *Heller* Court held that to "bear" arms meant to "carry" them.  *Heller*, 554 U.S. at 584.

> To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.

*Id.* (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)).

The right to armed self-defense in public, which can of course be regulated within constitutional limits, was recognized by the panel

8

majority in this case, by the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), by the District of Columbia Circuit in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), and assumed *arguendo* in many other cases (*See*, *e.g.*, *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013); *Drake v Filko*, 724 F.3d 426, 431 (3d Cir. 2013); *Kachalsky v. Cty. Of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012). Even the *Peruta en banc* decision does not contradict this conclusion, as that Court specifically did not address the open carry issue. *Peruta*, 824 F.3d at 927.

The right to the public carry of firearms for self-defense is also a liberty interest apart from the Second Amendment, however, because of the historical understanding, as the panel majority noted, that: "everyone is at liberty to keep or carry a gun, if he does not use it for the [unlawful] destruction of game." *Young*, 896 F.3d at 1054 (quoting 2 William Blackstone, Commentaries on the Laws of England 441 (Edward Christian ed., 1795), and that "the right of the people to keep and bear arms" is the 'true palladium of liberty.'" *Young*, 896 F.3d at

9

1053 (quoting 1 St. George Tucker, *Blackstone's Commentaries: With Notes of Reference to the Constitution and Laws of the Federal Government of the United States; and of the Commonwealth of Virginia* app. n.D. at 300 (Phil., William Young Birch & Abraham Small 1803)).

On a more personal level, Plaintiff has a liberty interest in his ability to defend himself in the event of a physical assault, and in the protection of his life and health. Besides the constitutional injuries suffered by deprivation of Plaintiff's rights, the personal deprivation in being harmed by a violent attacker, because the Government prohibited him from being able to protect himself, is among the most compelling one could suffer.

Therefore, though the District Court erroneously concluded no liberty interest was at stake, *Young*, 911 F.Supp.2d at 993, and the panel did not address the issue, in fact H.R.S. § 134-9(a) does implicate Plaintiff's liberty interest in the exercise of his Second Amendment rights, and in a proper analysis the Court would then move on to the *Mathews* balancing test.

10

## III.   PLAINTIFFS MEET THE ELEMENTS OF THE *MATHEWS* TEST.

*1.   Plaintiff's private interest in the public carry of firearms is negatively affected by the official action.*

The private interest has been described above, as Plaintiff's liberty interest in the ability to publicly carry arms outside the home for self-defense is fundamental.  This is why the panel majority was correct and this Court should deny Defendants' *en banc* request, as the Supreme Court has now repeatedly held that "[the very enumeration of the right takes out of the hands of government-even the Third Branch of Government-the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634; *McDonald*, 561 U.S. at 791.  Though *Heller* was of course referring to the Second Amendment right to bear arms, the parallel is instructive.

This Circuit has described this element as giving an examination "in particular, to the 'degree of potential deprivation that may be created.'" *Nozzi*, 806 F.3d at 1193 (quoting *Mathews*, 424 U.S. at 341).

As Plaintiff's liberty interest in the public carry of arms (whether

11

concealed or open) for self-defense is fundamental, the private interest at issue is undeniably affected by the failure of H.R.S. § 134-9(a) to afford Plaintiff *any* procedural due process, thus completely depriving Plaintiff of the right at all. Therefore, the first *Mathews* element is met and weighs in Plaintiff's favor.

2.    *The risk of an erroneous deprivation of such interest through the procedures used is enormous, and the probable value of additional or substitute procedural safe-guards is great.*

The "exceptional case" requirement for obtaining a concealed carry license, which is a completely arbitrary decision subject to the whim of the Chief of Police, renders H.R.S. § 134-9(a) devoid of due process and is, therefore, unconstitutional. *See Largent v. Texas*, 318 U.S. 418, 422 (1943) (striking ordinance allowing speech permit where mayor "deems it proper"). Worse, under the statute one can only obtain an open carry license when one demonstrates "the urgency or the need" *and* one is "engaged in the protection of life and property." The County Defendant admitted that no one other than a security guard, or someone similarly employed, has ever received such a license." *See Young*, 896 F.3d at

12

1070. "The typical, law-abiding citizen in the State of Hawaii is therefore entirely foreclosed from" bearing arms for self-defense. *Id.* at 1071.

This makes the discretionary power of the relevant government official even more stark and unfair to the law-abiding citizen, who literally has no recourse under the statute, whether judicial, appellate or even administrative, against the Chief's decision. That decision, no matter how unfair or unfounded, is final.

Though discussing the Second Amendment right at the time, the panel majority could have been speaking of the Due Process right when it held: "[a]n individual right that does not apply to the ordinary citizen would be a contradiction in terms; its existence instead would wax and wane with the whims of the ruling majority." *Id.*

There is a parallel to prior restraint doctrine in this case, as both involve a right that enjoys lesser status when its exercise is only at the government's whim:

> It is settled by a long line of recent decisions of this Court that an ordinance which. . . makes the peaceful

13

> enjoyment of freedoms which the Constitution
> guarantees contingent upon the uncontrolled will of an
> official—as by requiring a permit or license which may
> be granted or withheld in the discretion of such
> official—is an unconstitutional censorship or prior
> restraint upon the enjoyment of those freedoms.

*Staub v. City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted).

While the prior restraint doctrine is not specifically before this Court, when the liberty interest exists only at the pleasure of County law enforcement, and the ability to exercise the interest is never granted, or is granted under such limited circumstances that the ordinary resident has virtually no chance to do so, then the risk of an erroneous deprivation is enormous.

Following this reasoning, for example, Rhode Island's Supreme Court "will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency." *Gadomski v. Tavares*, 113 A.3d 387, 390 (R.I. 2015) (quotation omitted). The Court held that "[t]o prevent such an occurrence, we opined that 'certain procedural steps must be employed to allow a meaningful review' of licensing decisions by this Court." *Id.*

14

at 390 (quoting *Mosby v. Devine*, 851 A.2d 1031, 1051 (R.I. 2004)).

"One does not need to be an expert in American history to understand the fault inherent in a gun-permitting system that would allow a licensing body *carte blanche* authority to decide who is worthy of carrying a concealed weapon." *Mosby*, 851 A.2d at 1050.

There are also similarities to *People v. Zerillo*, 219 Mich. 635 (1922), where the Michigan Supreme Court struck down a statute prohibiting aliens from possessing revolvers without their Sheriff's consent, because the licensing discretion was held to be a destruction of a constitutional right to bear arms. "The exercise of a right guaranteed by the Constitution cannot be made subject to the will of the sheriff. The part of the act under which the prosecution was planted is not one of regulation but is one of prohibition and confiscation." *Id*. at 639. "The [provision] making it a crime for an unnaturalized, foreign-born resident to possess a revolver, unless so permitted by the sheriff, contravenes the guaranty of such right in the Constitution of the State and is void." *Id*. at 642.

15

The Ninth Circuit held in *Peruta* that the concealed carry of firearms is outside of the Second Amendment right and that it does not, in a vacuum, trigger a liberty interest. But it is also axiomatic that if the Court is going to rely on the concealed carry permit as a permissible alternative to the liberty interest of open carry, then that concealed carry permit process must comply with the Plaintiff's Due Process rights. Instead, it fails completely.

The Ninth Circuit addressed Due Process deprivation in *Nozzi*, which involved the reduction of subsidies to Section 8 beneficiaries. In discussing the risk of erroneous deprivation, the Court held "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Nozzi*, 806 F.3d at 1194. The defendant sent a flyer that purportedly complied, but the Court noted: "[t]he flyer was, without doubt, entirely insufficient to meet this standard. In no respect does it reasonably inform its intended recipients of the changes to the payment standard, the meaning of those changes, or, most important, their effect upon the recipient." *Id.*

16

Similarly, in H.R.S. § 134-9(a) there is no fair notice of what qualifies as an exceptional case, and no opportunity for review of the Chief of Police's unilateral decision, so the risk of an erroneous derivation is high.

3.  *The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, is minimal or non-existent.*

Amending the application process to comport with due process would impose only the imposition of some appellate process and guidelines. In deciding this matter, this Court should consider that the policies *sub judice* were put in place before *Heller* and *McDonald*. *See St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 53 (1936) ("the judicial scrutiny must of necessity take into account the entire legislative process, including the reasoning and findings upon which the legislative action rests"). Thus, the Chief was under the erroneous assumption that these policies were not affecting fundamental rights or liberty interests. As described, *supra*, these laws do affect Plaintiff's liberty interests and, therefore, must comport with Plaintiff's Due

17

Process rights under the Fourteenth Amendment. This failure to provide due process, resulting in the deprivation of a liberty interest, must be corrected by the Defendants. The deprivation of the People's rights and liberties is not in the government interest, and compelling the State or County to provide a fair process to apply for, and appeal the denial of, a concealed (or open) carry permit does not burden the Defendants, either fiscally or administratively.

A useful comparison can be seen in *Firearms Records Bureau v. Simkin*, 466 Mass. 168 (Mass. 2013). In *Simkin*, a New Hampshire had an out-of-state Massachusetts license to carry firearms. After a doctor's visit where plaintiff used a pseudonym to protect his privacy and gave an incorrect address, told the medical assistant prior to disrobing that he was armed and needed to secure his firearms. Employees of the office were "alarmed" and "concerned for their safety" and someone called the police. *Id.* at 169-70. The state firearm bureau decided that, because of this incident, Simkin was no longer a "suitable person" to have a firearm license. *Id.* at 170-71. Simkin sued and the trial judge

18

overturned the denial, holding that (1.) "suitability" was not a stated disqualifying factor for a license, (2.) Simkin's unrestricted firearms license meant he was doing nothing wrong during the alleged incident by having or securing a firearm, and (3.) he was doing nothing illegal at the time of the incident. *Id.* at 171. The Appellate Court reversed, holding his "unusual" behavior at the doctor's office meant he was "unsuitable," which the Court held applied to temporary non-resident licenses like that possessed by Simkin. *Id.* at 172.

The Massachusetts Supreme Court first agreed with the state that the "suitability" requirement applied to Simkin's temporary non-resident license. *Id.* at 175-177. However, the Court noted the state has broad discretion and considerable latitude to determine if applicant was a suitable person, but there was no definition of "suitable person" in the statutes. *Id,* at 179. This meant that the state could deny a license for "for a variety of reasons, including conduct that falls outside of the enumerated disqualifiers and conduct that falls short of criminal behavior." *Id.* at 180. Ultimately, the Court agreed with the trial court

19

and overruled the Appellate Court:

> A revocation will be overturned as arbitrary or capricious where "no reasonable ground" exists to support it. G. L. c. 140, § 131 (f). *See Chardin, supra* at 317. Even when viewed in their totality, Simkin's arguably unusual but otherwise innocuous actions did not provide a "reasonable ground" to deem him no longer a "suitable person" to carry firearms. This is particularly the case where the Executive Office of Public Safety and Security or its designee has not promulgated any regulations governing suitability, and therefore has provided applicants and license holders with little guidance on what it means to be a "suitable person." In the absence of any such regulations, individual suitability determinations become more susceptible to attack on the ground that they are arbitrary and capricious.

*Id* at 181-82.

Because Simkin had a license to carry multiple firearms, he was not "unsuitable" for doing so. Though someone may be "alarmed" by someone else carrying a firearm, Simkin was not "unsuitable" because someone was alarmed by Simkin doing exactly what he was licensed to do. And there was no regulation prohibiting Simkin from using a pseudonym at a doctor's office. Therefore, the license revocation was overturned. *Id.* at 182-83.

20

Though the Massachusetts "suitability" standard was further defined by statute in 2015 (*See* G. L. c. 140, § 131 (d); *See also Chief of Police of the City of Worcester v. Holden*, 470 Mass. 845, 855 (Mass. 2015)), *Simkin* is still analogous to the present case, and therefore has persuasive value.

This was noted in *Gould v. Morgan*, 2018 U.S. App. LEXIS 31129, *33 (1st Cir. 2018), where the First Circuit noted that "the Hawaii law struck down by the Ninth Circuit created a regime under which not a single unrestricted license for public carriage had ever been issued." *Id.* (citing *Young*, 896 F.3d at 1071, n.21). Further, the *Gould* Court stated the concealed carry licensing regime in Massachusetts "provided for administrative or judicial review of any license denial, . . . a safeguard conspicuously absent from Hawaii's laws." *Gould*, 2018 U.S. App. LEXIS 31129 at *33 (quoting *Young*, 896 F.3d at 1072).

This is not the only previous occasion Hawaii's attitude towards the public carry of firearms has been called out. In *Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017), the plaintiff challenged his federal

21

firearms prohibitor for a misdemeanor domestic violence conviction

under 18 U.S.C. § 922(g)(9). He raised an as-applied challenge, and also

argued that, "as a matter of statutory construction, section 922(g)(9)

applies only in states where each of the mechanisms listed in section

921(a)(33)(B)(ii) (expungement, set-aside, pardon, and civil rights

restoration) are available to restore Second Amendment rights." *Id.* at

1069. The Court rejected these arguments, and also declined to

consider a due process challenge to Hawaii's gubernatorial pardon

process, which plaintiff raised for the first time on appeal. *Id.* at 1071.

However, in concurrence, the *Fisher* Court noted:

> Hawaii's procedure for restoring Second Amendment
> rights is notably slender: The governor can pardon
> someone. But gubernatorial clemency is without
> constraint; as Blackstone put it, an executive's mercy
> springs from "a court of equity in his own breast." 4
> William Blackstone, *Commentaries* *390. This
> unbounded discretion sits in uneasy tension with how
> rights function. A right is a check on state power, a
> check that loses its force when it exists at the mercy of
> the state. Government whim is the last refuge of a
> precarious right. And while Fisher's case gives us no
> occasion to seek better refuge, others will.

*Id.* at 1072 (Kozinski, J., concurring).

22

While neither the *Gould* nor *Fisher* Courts addressed the due process issue, these observations about Hawaii underscores why the due process issue should not be ignored in this case. Even if the Court were inclined to agree with the panel dissent, Plaintiff should nonetheless prevail because the completely arbitrary standard for obtaining either a concealed or open carry license in the County of Hawaii, coupled with the facts that it is both virtually impossible to get either type of carry license in the County of Hawaii, means that the Plaintiff (and anyone else who wishes to exercise the public carry of firearms) is completely denied due process by the Defendants. Though the panel did not consider the question, the Plaintiff's Fourteenth Amendment rights were violated, and is an additional basis for Plaintiff to prevail in this matter. Because the panel's result was correct, this Court should decline further review.

## *CONCLUSION*

The Defendants-Appellee's Petition for Rehearing *en banc* should be denied.

23

Dated: November 19, 2018                    Respectfully submitted,

                                    By: _____/s/ David G. Sigale_____
                                         Attorney for *Amicus Curiae*
                                         Second Amendment Foundation,
                                         Inc.

David G. Sigale (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Circuit Rule 29-2, the foregoing amicus brief in opposition to a petition for rehearing *en banc*:

1.     Contains 4,195 words; and

2.     Has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century font, which complies with Fed. R. App. P. 32 (a)(5)-(6).

/s/ David G. Sigale
David G. Sigale

David G. Sigale (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com

9th Circuit Case Number(s) | 12-17808

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 11/19/2018 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ David G. Sigale

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)