No. 12-17808

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEORGE K. YOUNG, JR.,
*Plaintiff-Appellant*,

v.

STATE OF HAWAIʻI, ET AL.,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Hawaiʻi, No. 1:12-cv-00336-HG-BMK
District Judge Helen Gillmor

## JOINT RESPONSE IN OPPOSITION TO
## PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY REVERSAL

HOLLY T. SHIKADA
  *Attorney General of the State of Hawaiʻi*
KIMBERLY T. GUIDRY
  *Solicitor General of the State of Hawaiʻi*
ROBERT T. NAKATSUJI
KALIKOʻONĀLANI D. FERNANDES
  *Deputy Attorneys General*
DEPARTMENT OF THE ATTORNEY
  GENERAL, STATE OF HAWAIʻI
425 Queen Street
Honolulu, Hawaiʻi 96813
kimberly.t.guidry@hawaii.gov

*Counsel for the State of Hawaiʻi
Defendants-Appellees*

ELIZABETH A. STRANCE
  *Corporation Counsel*
LAUREEN L. MARTIN
LERISA L. HEROLDT
STEVEN K. IDEMOTO
  *Deputy Corporation Counsel*
COUNTY OF HAWAIʻI
101 Aupuni Street
Suite 325
Hilo, Hawaiʻi 96720

*Counsel for the County of
Hawaiʻi Defendants-Appellees*

NEAL K. KATYAL
JOHANNAH WALKER
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
Email: neal.katyal@hoganlovells.com

*Attorneys for Defendants-Appellees*

Defendants-Appellees ("**Appellees**") submit the following response in opposition to the motion for summary reversal ("**Motion**" or "**Mot.**")[1] filed by Plaintiff-Appellant George K. Young, Jr. ("**Appellant**" or "**Young**").

On June 30, the Supreme Court entered an order granting Young's petition for certiorari, vacating the judgment, and remanding this case to this Court for further consideration in light of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. __ (2022).[2] Later that same day, Appellant filed a motion for summary reversal in this Court pursuant to Ninth Circuit Rule 3-6. Appellant asks this Court to "*immediately* grant this Motion and reverse with instructions to the district court to enjoin Hawaii's 'exceptional case' or 'urgency or need' statute and order . . . the Defendants to issue Mr. Young his permit *immediately*." Mot. at 6 (emphases in original). The Court should deny Appellant's Motion. Once

---

[1] Dkt. 324-1.
[2] Such orders—"GVRs"—are "a device that allows a lower court that had rendered its decision without the benefit of an intervening clarification to have an opportunity to reconsider that decision and, if warranted, to revise or correct it." *Gonzalez v. Justs. of Mun. Ct. of Bos.*, 420 F.3d 5, 7 (1st Cir. 2005). GVRs "promote[] fairness and respect[] the dignity of the Court of Appeals by enabling it to consider potentially relevant decisions and arguments that were not previously before it." *Stutson v. United States*, 516 U.S. 193, 197 (1996). "[W]hen the Supreme Court grants, vacates, and remands ('GVRs') a case," however, "it does not make a decision on the merits of the case nor dictate a particular outcome." *Cole v. Carson*, 935 F.3d 444, 450 n.21 (5th Cir. 2019).

1

jurisdiction has returned to this Court on July 25, Appellees respectfully request an opportunity to submit supplemental briefing as set forth below.

**1.** To start, the relief Appellant seeks—reversal with instructions to grant immediate injunctive relief—is plainly not warranted. Although Appellant's Motion invites this Court to "immediately grant [his] Motion and reverse with instructions to the district court to enjoin Hawaii's 'exceptional case' or 'urgency or need' statute and [to] order the Defendants to issue Mr. Young his permit immediately," Mot. at 6,[3] there is no basis to grant such relief here.

This is an appeal from the district court's grant of a motion to dismiss under FRCP Rule 12. No trial has occurred and no summary judgment motions have been filed; Appellees have not even filed answers yet. Nor did Appellant file a motion for a preliminary injunction or TRO in the district court. The record here cannot justify the relief Mr. Young seeks (Mot. at 6, 7), and the Motion simply assumes away the rigorous legal test applicable to such requests.[4]

---

[3] *See also* Mot. at 7 ("The Court should reverse the district court with instructions to enjoin the offending law and instruct the district court to order Defendants to issue Mr. Young his permit immediately.").

[4] "A preliminary injunction is an extraordinary remedy never awarded as of right[,]" *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 652 (9th Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter*, 555 U.S. at 20).

Crucially, nothing in *Bruen* establishes that Mr. Young is *automatically* entitled to a permit, or suggests that permitting is inherently suspect. Far from it: The Court's decision in *Bruen* expressly rejects the idea that licensing and permitting requirements are categorically invalid. *See Bruen*, 2022 WL 2251305, at *18 n.9; *see also id.* at *39 (Kavanaugh, J., concurring) ("[T]he 6 States . . . potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States.").

**2.** Appellant's request for "immediate" relief also founders for another reason. In accordance with Supreme Court Rule 45 (and the general principle that federal courts do not simultaneously exercise jurisdiction over the same case), this Court should decline to take further action in this case until July 25—25 days following the date on which the Supreme Court's GVR order was entered.[5] Accordingly, the Court should decline Appellant's invitation to act "immediately" (Dkt. 324-1 at 6 (emphasis omitted)), given the need to await the sending down of

---

[5] Under Rule 45(3), "[i]n a case on review from any court of the United States, . . . a formal mandate does not issue unless specially directed; instead, the Clerk of this Court will send the clerk of the lower court a copy of the opinion or order of this Court and a certified copy of the judgment." Sup. Ct. R. 45(3). Thus, as the notification by the Supreme Court Clerk's Office regarding the GVR order advises, "[t]he judgment or mandate of this Court will not issue for at least twenty-five days pursuant to Rule 45." Ex. 2.

the judgment to this Court. *See* Supreme Court Rule 45(2), (3).[6] Because the Supreme Court's GVR order was entered on Thursday, June 30, 2022, judgment in this case will not be sent down to the Ninth Circuit until Monday, July 25, 2022.

**3.** Finally, Appellees respectfully request an opportunity to submit supplemental briefing before this panel regarding the following two issues:

(1) whether, and to what extent, aspects of the en banc panel's published opinion of March 24, 2021 remain unaffected by the Supreme Court's decision in *Bruen* and should be recognized as remaining intact as the law of the case; and

(2) whether the judgment affirming the district court's dismissal of the complaint should be reinstated following the GVR order—including whether alternative grounds support dismissal of this case once post-*Bruen* guidance from the Hawaiʻi Attorney General has been taken into account.

---

[6] *See generally* Stephen M. Shapiro et al., *Supreme Court Practice* § 15.8 at 15-27 (11th ed. 2019) ("In cases coming to the Supreme Court from lower federal courts, a formal mandate does not issue unless the Court specifically so directs. Ordinarily, the Clerk forwards to the lower federal court a copy of the opinion or order of the Supreme Court together with a certified copy of its judgment, which includes a provision for costs if any are awarded. The Clerk takes this action 25 days after entry of judgment unless the time is shortened or enlarged by the Court or a Justice, or unless the parties stipulate to a shorter period of time." (Citations omitted.)).

Crucially, several aspects of the en banc panel's opinion are plainly compatible with *Bruen* and should therefore be recognized as remaining intact following the GVR. For example, this Court's holding that Appellant's procedural due process challenge is premature is clearly unaffected by *Bruen*. *See Young v. Hawai'i*, 992 F.3d 765, 828 (9th Cir. 2021) (en banc). Likewise, *Bruen* does not impact this Court's holding that the doctrine of prior restraint is inapplicable in the Second Amendment context. *See Young*, 992 F.3d at 827-28. Nor does the Supreme Court's decision in *Bruen* affect this Court's holding that, based on the record in this litigation, Appellant pleaded and preserved only a facial challenge to HRS § 134-9. These three parts of the en banc panel's opinion, at the very least, should be recognized as remaining intact as the law of the case. Preserving all aspects of the en banc opinion that are not irreconcilable with *Bruen* will provide important guidance to the district court in the event of any future remand by limiting the scope of the issues, and will facilitate conservation of litigant and judicial resources.

Supplemental briefing will also assist this panel in its assessment of whether there are other aspects of the Court's judgment that also should be preserved post-*Bruen*—and whether alternative grounds may support dismissal once post-*Bruen* guidance from the State Attorney General has been taken into account.

In response to a request from Governor David Ige, the Hawaiʻi Attorney General on July 7 issued important new guidance regarding the State's firearms licensing regime. *See* State of Haw., Dep't of the Att'y Gen., Opinion Letter No. 22-2, *Public Carry Licensing Under Hawaiʻi Law Following* New York State Rifle & Pistol Association v. Bruen (July 6, 2022), https://ag.hawaii.gov/wp-content/uploads/2022/07/Attorney-General-Opinion-22-02.pdf (last visited July 11, 2022) (attached as Ex. 1). In a formal, published opinion construing HRS § 134-9 in light of (1) federal constitutional requirements, (2) the structure and purposes of the relevant statutory framework, and (3) general principles of Hawaiʻi public policy, the Attorney General opined that "[f]ollowing *Bruen*, the language in Hawaiʻi Revised Statutes ('HRS') § 134-9 requiring that an applicant '[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property' in order to obtain a concealed carry license should no longer be enforced." *Id*. at 2. The Attorney General further opined that although "good cause should no longer be required for *concealed* carry licenses, the good cause requirement in HRS § 134-9(a) for *unconcealed* carry—that an applicant must 'sufficiently indicate[]' an 'urgency' or 'need' to carry a firearm and that the applicant is 'engaged in the protection of life and property'—should still be applied as to unconcealed carry applications." *Id*. at 5 (emphasis added).

6

When this guidance is considered against the nature and scope of the relief sought by Appellant in this litigation—"concealed *or* unconcealed" "carry[ing of] a firearm in public"[7]—Appellees believe that dismissal of Appellant's complaint, and dismissal of this case, continues to be the correct result.

In the alternative, should this panel conclude that a remand to the district court is warranted in the first instance, Appellees submit that the proper course with respect to a remand would not be reversal (or reversal with instructions, as Appellant urges (Mot. at 6, 7)), but rather a vacatur and general remand.

***

The Court should deny Appellant's Motion.

DATED: Honolulu, Hawaiʻi, July 11, 2022.

*/s/ Kimberly T. Guidry*
KIMBERLY T. GUIDRY
*Attorney for the State of Hawaiʻi Defendants-Appellees*

DATED: Hilo, Hawaiʻi, July 11, 2022.

*/s/ Laureen L. Martin*
LAUREEN L. MARTIN
*Attorney for the County of Hawaiʻi Defendants-Appellees*

---

[7] *Young*, 992 F.3d at 777 (emphasis added).

**DAVID Y. IGE**
GOVERNOR



**HOLLY T. SHIKADA**
ATTORNEY GENERAL

**VALERIE M. KATO**
FIRST DEPUTY ATTORNEY GENERAL

**STATE OF HAWAII**
**DEPARTMENT OF THE ATTORNEY GENERAL**
425 QUEEN STREET
HONOLULU, HAWAII 96813
(808) 586-1500

July 7, 2022

The Honorable David Y. Ige
Governor, State of Hawaiʻi
Executive Chambers
State Capitol
Honolulu, Hawaiʻi 96813

 RE: Public Carry Licensing Under Hawaiʻi Law Following *New York State Rifle & Pistol Association v. Bruen*

Dear Governor Ige:

This letter responds to your request for a formal legal opinion clarifying the requirements to obtain licenses to carry firearms under Hawaii's current statutory regime following the United States Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, No. 20-843.

In *Bruen*, the U.S. Supreme Court concluded that New York's requirement that applicants demonstrate "proper cause" to obtain a license to carry a concealed weapon violates the Second and Fourteenth Amendments. The Court identified Hawaiʻi as one of six states (seven jurisdictions including the District of Columbia), that have "may issue" licensing laws like New York's. *See Bruen*, slip op. at 4-6.

The interpretation of state law set forth in this opinion is based upon the structure and purposes of the relevant statutory framework, considered in light of our understanding of state policy and in light of federal constitutional requirements.

Op. No. 22-02

# EXHIBIT 1

I.   **ISSUE PRESENTED AND SHORT ANSWER**

What requirements apply to applications to carry a firearm in public under Hawaii's current statutory regime following the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*?

**Short Answer:** Following *Bruen*, the chiefs of police may not constitutionally restrict both concealed and unconcealed (open) carry licenses only to those who demonstrate a "special need." Following *Bruen*, the language in Hawaiʻi Revised Statutes ("HRS") § 134-9 requiring that an applicant "[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property" in order to obtain a concealed carry license should no longer be enforced. All other statutory requirements for obtaining a concealed carry license are unaffected by *Bruen*, and (except for the citizenship requirement as applied to lawful permanent residents and U.S. nationals[1]) remain in full force and effect.

Assuming this approach to concealed carry licenses, *Bruen* does not require any change to the requirements established under HRS § 134-9 to obtain an unconcealed carry license. An applicant for an unconcealed carry license must still "sufficiently indicate[]" that he or she has an "urgency" or "need" to carry a firearm and is "engaged in the protection of life and property," along with any other statutory requirements that must be satisfied under Hawaiʻi law to obtain an unconcealed carry license (except for the citizenship requirement as applied to lawful permanent residents and U.S. nationals[2]). The standards that the chiefs of police should apply in considering applications for unconcealed carry licenses are discussed in Attorney General Opinion No. 18-1.

II.  **DISCUSSION**

Hawaiʻi law – in recognition of the potential risks to public safety – has imposed limits on the public carry of firearms for over 150 years. *See, e.g.*, 1852 Haw. Sess. Laws

---

[1] *See infra* n.3.
[2] *Id.*

Op. No. 22-02

Act of May 25, 1852, § 1 at 19.

Current Hawaiʻi law permits individuals to lawfully carry a pistol or revolver within a county if they obtain a license from the county's chief of police. *See* HRS § 134-9. Two types of carry licenses may be issued: A chief of police may issue a *concealed* carry license "[i]n an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property," and satisfies certain other statutory requirements. HRS § 134-9(a)-(b). A chief of police may issue an *unconcealed* carry license to an applicant "[w]here the urgency or the need has been sufficiently indicated," the applicant "is engaged in the protection of life and property," the applicant is "of good moral character," and certain other statutory requirements are satisfied. HRS § 134-9(a).[3]

### A. Concealed Carry License Applications Following *Bruen*

Following *Bruen*, the requirement in HRS § 134-9(a) that an applicant "[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property" to obtain a concealed carry license should no longer be enforced. The chiefs of police should not deny an application for a concealed carry license, or impose restrictions on a concealed carry license, because an applicant fails to demonstrate a special need or a sufficiently good reason to carry a firearm. All other statutory requirements for obtaining a concealed carry license – except the citizenship requirement as applied to lawful permanent residents and U.S. nationals – remain in full force and effect, and should continue to be enforced by the chiefs of police.

---

[3] HRS § 134-9(a) states that applicants must be citizens of the United States to obtain either a concealed or unconcealed carry license (or as to concealed carry licenses, "a duly accredited official representative of a foreign nation"). The requirement in HRS § 134-9(a) that an applicant be a citizen of the United States may not be enforced as to lawful permanent residents or U.S. nationals. *See Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014); *Roberts v. Connors*, Civ. No. 19-165 DKW-WRP (D. Haw.) (Doc. 25, Stipulation to Dismiss Complaint for Declaratory and Injunctive Relief, Filed on April 2, 2019 With Prejudice, and Order); *Nickel v. Connors*, Civ. No. 20-00330 JMS-RT (D. Haw.) (Doc. 22, Stipulation and Order).

For example, the chiefs of police can and should still require that applicants for a concealed carry license "[b]e qualified to use the firearm in a safe manner," "[n]ot be prohibited under section 134-7 from the ownership or possession of a firearm," and "[n]ot have been adjudged insane or not appear to be mentally deranged."  HRS § 134-9(b).  The chiefs of police should also still require that applicants for a concealed carry license "[a]ppear to be a suitable person to be so licensed."  *Id; see Bruen*, slip op. at 5 n.1 (discussing a "suitable person" requirement which "precludes permits only to those 'individuals whose conduct has shown them to be lacking the essential character o[r] temperament necessary to be entrusted with a weapon'"); *id.* at 30 n.9 (recognizing that states may impose requirements "designed to ensure only that those bearing arms in the jurisdiction are . . . 'law-abiding, responsible citizens'").

Being "a suitable person" means that the applicant does not exhibit specific and articulable indicia that the applicant poses a heightened risk to public safety.  The chiefs of police may consider the following factors when determining whether an applicant displays specific and articulable indicia that the applicant poses a heightened risk to public safety, such that the applicant is not "a suitable person to be so licensed":

1.  Whether the applicant has been involved in recent incidents of alleged domestic violence;

2.  Whether the applicant has been involved in recent incidents of careless handling or storage of a firearm;

3.  Whether the applicant has been involved in recent incidents of alcohol or drug abuse;

4.  Whether the applicant has been involved in other recent violent conduct.

In sum, the only portion of Hawaii's concealed carry law – other than the citizenship requirement as applied to lawful permanent residents and U.S. nationals – that should not be enforced following *Bruen* is the requirement that an applicant "[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property" to obtain a concealed carry license.  HRS § 134-9(a).

However, even though the chiefs of police should no longer enforce the requirement that an applicant "[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property" to obtain a concealed carry license, HRS § 134-9(a), the chiefs of police may still inquire about an applicant's reasons for seeking a concealed carry license. The reasons an applicant provides should only be used in reviewing a concealed carry application to the extent relevant to other lawful requirements to obtain a concealed carry license, such as whether the applicant is a "suitable person." An applicant's reasons for seeking a concealed carry license should not be used to deny or restrict a license because the applicant purportedly lacks a sufficiently good reason to obtain a license.

### B.   Unconcealed Carry License Applications Following *Bruen*

Although *Bruen* recognized a right to public carry under the U.S. Constitution, it did not recognize a specific right to either concealed or unconcealed carry. *See Bruen*, slip op. at 44 ("[T]he history reveals a consensus that States could not ban public carry altogether." (emphasis omitted)); *id.* at 41-42 ("[I]n the century leading up to the Second Amendment and in the first decade after its adoption, there is no historical basis for concluding that the pre-existing right enshrined in the Second Amendment permitted broad prohibitions on *all* forms of public carry." (emphasis added)); *id.* at 46 ("[I]t was considered beyond the constitutional pale in antebellum America to altogether prohibit public carry."). This leaves states with discretion to place good cause restrictions on one form of carry, where similar restrictions are not placed on the other form of carry. *See id.* at 44-45.

Although, as noted above, good cause should no longer be required for concealed carry licenses, the good cause requirement in HRS § 134-9(a) for unconcealed carry – that an applicant must "sufficiently indicate[]" an "urgency" or "need" to carry a firearm and that the applicant is "engaged in the protection of life and property" – should still be applied as to unconcealed carry applications. Any other statutory requirements that must be satisfied under Hawaiʻi law to obtain an unconcealed carry license – except for the citizenship requirement as applied to lawful permanent residents and U.S. nationals – should likewise continue to be applied.

The standards that the chiefs of police should use in considering applications for unconcealed carry licenses are discussed in Attorney General Opinion No. 18-1, which remains valid and applicable.

### III. CONCLUSION

We advise that as to applications for concealed carry licenses, the chiefs of police should no longer require that an applicant "[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property" in order to obtain a concealed carry license. HRS § 134-9(a). The chiefs of police should continue to enforce all other statutory requirements for obtaining a concealed carry license, except for the citizenship requirement as applied to lawful permanent residents and U.S. nationals.

Furthermore, we advise that as to unconcealed carry licenses, the chiefs of police should continue to enforce all requirements for an unconcealed carry license that were applicable before *Bruen* (this excludes the citizenship requirement as applied to lawful permanent residents and U.S. nationals). An applicant must still, among other things, "sufficiently indicate[]" an "urgency" or "need" to carry a firearm, and that the applicant is "engaged in the protection of life and property." HRS § 134-9(a).

Very truly yours,

Holly T. Shikada
Attorney General

Supreme Court of the United States
Office of the Clerk
Washington, DC  20543-0001

June 30, 2022

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

Clerk
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA  94103-1526

Re:  George K. Young, Jr.
v. Hawaii, et al.
No. 20-1639
(Your No. 12-17808)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is granted.  The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U. S. ___ (2022).

The judgment or mandate of this Court will not issue for at least twenty-five days pursuant to Rule 45.  Should a petition for rehearing be filed timely, the judgment or mandate will be further stayed pending this Court's action on the petition for rehearing.

Sincerely,

*[signature]*

**Scott S. Harris**, Clerk

# EXHIBIT 2

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this filing complies with the typeface and type-style requirements of Fed. R. App. P. 32(a), and the type-volume limitations of Fed. R. App. P. 27(d) and this Court's Rules 27-1 and 32-3. This filing has been prepared in 14-point Times New Roman, a proportionally-spaced font. It contains 1,688 words, excluding the parts of the motion excluded by Fed. R. App. P. 27(d)(2) and 32(f).

DATED: Honolulu, Hawaiʻi, July 11, 2022.

>*/s/ Kimberly T. Guidry*
>KIMBERLY T. GUIDRY
>*Attorney for the State of Hawaiʻi*
>*Defendants-Appellees*

DATED: Hilo, Hawaiʻi, July 11, 2022.

>*/s/ Laureen L. Martin*
>LAUREEN L. MARTIN
>*Attorney for the County of Hawaiʻi*
>*Defendants-Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: Honolulu, Hawaiʻi, July 11, 2022.

> */s/ Kimberly T. Guidry*
> KIMBERLY T. GUIDRY
> *Attorney for the State of Hawaiʻi Defendants-Appellees*

DATED: Hilo, Hawaiʻi, July 11, 2022.

> */s/ Laureen L. Martin*
> LAUREEN L. MARTIN
> *Attorney for the County of Hawaiʻi Defendants-Appellees*