**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE K. YOUNG, JR., *Plaintiff-Appellant,* v. STATE OF HAWAII; NEIL ABERCROMBIE, in his capacity as Governor of the State of Hawaii; DAVID MARK LOUIE I, Esquire, in his capacity as State Attorney General; COUNTY OF HAWAII, as a sub-agency of the State of Hawaii; WILLIAM P. KENOI, in his capacity as Mayor of the County of Hawaii; HILO COUNTY POLICE DEPARTMENT, as a sub-agency of the County of Hawaii; HARRY S. KUBOJIRI, in his capacity as Chief of Police; JOHN DOES, 1–25; JANE DOES, 1–25; DOE CORPORATIONS, 1–5; DOE ENTITIES, 1–5, *Defendants-Appellees.* | No. 12-17808 D.C. No. 1:12-cv-00336-HG-BMK ORDER |

On Remand from the United States Supreme Court

Filed August 19, 2022

Before:  Sidney R. Thomas, Diarmuid F. O'Scannlain, M. Margaret McKeown, Kim McLane Wardlaw, William A. Fletcher, Richard R. Clifton, Jay S. Bybee, Consuelo M. Callahan, Sandra S. Ikuta, Michelle T. Friedland and Ryan D. Nelson, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

## SUMMARY[*]

### Second Amendment

Following the Supreme Court's order vacating this court's judgment and remanding to this court "for further consideration in light of *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. ___ (2022)," the en banc court vacated the judgment of the district court and remanded this case to the district court for further proceedings pursuant to the Supreme Court order.

Dissenting, Judge O'Scannlain, joined by Judges Callahan, Ikuta, and R. Nelson, stated that the court shied away from its obligations to provide guidance to the lower courts and to answer the straightforward legal question of whether Hawaii's "may-issue" permitting scheme violated the Second Amendment right of a responsible law-abiding citizen to carry a firearm for self-defense outside of the home. *Bruen* held unconstitutional a "may-issue" permitting scheme for

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

public carry of handguns, much like the law challenged in this case. So, after *Bruen*, the question here was simple. Instead of remanding without explanation or justification, the court should have reversed the district court in an opinion holding that plaintiff had stated a claim upon which relief could be granted, that the "may-issue" permitting scheme was unconstitutional, and that the case must proceed accordingly in district court.

## ORDER

The Supreme Court vacated the judgment of this Court, 992 F.3d 765, and has remanded this case to us "for further consideration in light of *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. ___ (2022)," *Young v. Hawaii*, 2022 WL 2347578, at *1 (U.S. 2022). We vacate the judgment of the district court and remand this case to the district court for further proceedings pursuant to the Supreme Court order.

Plaintiff-Appellant's motion for summary reversal is **DENIED**.

Defendants-Appellees' request for supplemental briefing before this Court is **DENIED**.

O'SCANNLAIN, Circuit Judge, with whom CALLAHAN, IKUTA, and R. NELSON, Circuit Judges, join, dissenting:

I respectfully dissent from our failure to resolve the straightforward legal issues presented by this case. The Supreme Court has vacated the judgment of this Court and

remanded this case to us "for further consideration in light of *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. ___ (2022)." But today, we decline to give further consideration to the question presented to us and we decline even to deal with it.

This case presents the following question: in light of the Supreme Court's decision in *Bruen*, does Hawaii's "may-issue" permitting scheme violate the Second Amendment right of a responsible law-abiding citizen to carry a firearm for self-defense outside of the home? *Bruen* held unconstitutional a "may-issue" permitting scheme for public carry of handguns, much like the law challenged in this case. So, after *Bruen*, the question before us is simple. Nevertheless, our Court today declines to answer it. In refusing to do so, our Court delays the resolution of this case, wastes judicial resources, and fails to provide guidance to the lower courts of our Circuit. As a judge of this Court, I feel obliged to offer such guidance, even if a majority of my colleagues does not.

I

A

George Young wishes to carry a firearm for personal self-defense in the State of Hawaii. He twice in 2011 applied for a license to carry a handgun, either concealed or openly. His application was denied each time by the County of Hawaii's Chief of Police, Harry Kubojiri, because Young failed to satisfy the requirements set forth in section 134-9 of the Hawaii Revised Statutes ("H.R.S.").

Section 134-9 acts as a limited exception to the State of Hawaii's "Place[s] to Keep" statutes, which generally require that gun owners keep their firearms at their "place of business, residence, or sojourn." H.R.S. §§ 134-23, 134-24, 134-25. The exception allows citizens to obtain a license to carry a loaded handgun in public, either concealed or openly, under certain circumstances. *Id.* § 134-9. Respecting concealed carry, section 134-9 provides that "[i]n an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police . . . may grant a license to an applicant . . . to carry a pistol or revolver and ammunition therefor concealed on the person." The chief of police may, under section 134-9, grant a license for the open carry of a loaded handgun only "[w]here the urgency or the need has been sufficiently indicated" and the applicant "is engaged in the protection of life and property." The County of Hawaii has promulgated regulations to clarify that open carry is proper only when the license-holder is "in the actual performance of his duties or within the area of his assignment." Police Dep't of Cty. of Haw., *Rules and Regulations Governing the Issuance of Licenses* 10 (Oct. 22, 1997).

Absent a license under section 134-9, a person may only transport an unloaded firearm, in an enclosed container, to and from a place of repair, a target range, a licensed dealer, a firearms exhibit, a hunting ground, or a police station, H.R.S. §§ 134-23, 134-24, 134-25, 134-26, 134-27, and may use those firearms only while "actually engaged" in hunting or target shooting, *Id.* § 134-5.

B

Ten years ago, on June 12, 2012, Young filed this suit *pro se* under 42 U.S.C. § 1983 against the State of Hawaii, its then-Governor, Neil Abercrombie, and its then-Attorney General, David Louie (collectively "the State"), as well as the County of Hawaii, its then-Mayor, William Kenoi, the Hilo County Police Department, and its then-Chief of Police, Harry Kubojiri (collectively "the County"). Primarily alleging that denying his application for a handgun license violates his Second Amendment right to carry a loaded handgun in public for self-defense, Young requested, among other things, injunctive and declaratory relief from the enforcement of section 134-9's licensing requirements.

The State filed a motion to dismiss Young's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the County filed a motion to dismiss the claims under Rule 12(b)(6). The district court granted both. As for the State of Hawaii, the district court found Young's action to be barred by sovereign immunity. Young's action against the State officials—while not barred by sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908)—was dismissed because the district court found their general oversight of the enforcement of Hawaii's laws "insufficient to establish a nexus between [such] officials and the alleged violation of [Young's] civil rights."

Dismissing Young's action against the County on the merits, the district court determined that section 134-9 "does not implicate activity protected by the Second Amendment," because that Amendment "establishes only a narrow individual right to keep an operable handgun at home for self-defense." In the alternative, the district court indicated that it

would uphold section 134-9's open and concealed carry limitations under intermediate scrutiny. The district court reasoned that the State's "substantial interest in safeguarding the public from the inherent dangers of firearms" was reasonably furthered by policies that "enable[] officials to effectively differentiate between individuals who need to carry a gun for self-defense and those who do not." Young timely appealed.

In 2018, a three-judge panel of our Court reversed the district court's dismissal of Young's Second Amendment claim against the County, holding that he "has indeed stated a claim that section 134-9's limitations on the issuance of open carry licenses violate the Second Amendment." *Young v. Hawaii*, 896 F.3d 1044, 1074 (9th Cir. 2018). The panel dismissed as waived Young's appeal as to the State.[1] *Id.* This Court then granted rehearing en banc and vacated the three-judge panel's decision. *Young v. Hawaii*, 915 F.3d 681 (9th Cir. 2019).

In 2021, sitting en banc, we reached a conclusion different from that of the three-judge panel. *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc). Applying our court's post-*Heller* precedents, we held that the restrictions imposed by section 134-9 are "not within the scope of the right protected by Second Amendment." *Id.* at 826. Young filed a petition for writ of certiorari.

---

[1] At that time, Young filed a notice of appeal with respect to the dismissal of his claims against *both* the State and County, but on appeal he made no arguments to contest the district court's reasons for dismissing his claims against the State. Believing itself no longer a party to the case, the State neither filed a response brief nor sought to participate in oral argument. We thus did not review the district court's judgment regarding the State when we first heard this case.

Following its decision in *Bruen*, the Supreme Court granted Young's petition, vacated our en banc decision, and remanded the case to us for further consideration in light of its opinion.

II

A

For section 134-9 to pass constitutional muster, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, Slip Op. at 10. To the extent our court has required anything more in Second Amendment cases, those cases are no longer good law.

The Supreme Court in *Bruen* explicitly overruled the lower courts' two-step test which would apply means-end scrutiny to the Second Amendment. *Id.* at 8, 10, 15 (rejecting means-end scrutiny and admonishing the lower courts to apply a one-step categorical test). Because "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority," we are "bound by the later and controlling authority" of the Supreme Court, and therefore we must "reject the prior circuit opinion[s] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003). As the Supreme Court just instructed us, "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of

firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Bruen*, Slip Op. at 15 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10. (1961)).

B

In a Second Amendment case, we must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."  *Id.* at 17. However, although "[h]istorical analysis can be difficult" and, at times, it requires "nuanced judgments about which evidence to consult and how to interpret it," the analysis in this case is simple under the binding precedent set forth in *Bruen*.  *Id.* at 16 (quoting *McDonald v. Chicago*, 561 U.S. 742, 803–04 (2010) (Scalia, J., concurring)).

The three-judge panel undertook a thorough textual and historical inquiry the first time we heard this case, *see Young*, 896 F.3d at 1052, but we need not conduct the same inquiry now because the Supreme Court has already done it for us. In *Bruen*, the Court considered the constitutionality of "proper-cause" statutes such as that enacted by Hawaii.  *See* Slip Op. at 5–6 (identifying the Hawaii law at issue in this case as analogous to the New York law at issue in *Bruen*). Accordingly, the Supreme Court parsed the text of the Second Amendment and evaluated at great length "whether 'historical precedent' from before, during, and after the founding evinces a comparable tradition of regulation" to "proper-cause" laws.  *Id.* at 18; *see id.* at 23–62.  After thorough review, the Court concluded that neither text nor historical precedent support "proper-cause" language restrictions.

1

As with the petitioners in *Bruen*, Young is an "ordinary, law-abiding, adult citizen[]," and is therefore unequivocally "part of 'the people' whom the Second Amendment protects." *Id.* at 23.  As the Court observed in *Bruen*, "handguns are weapons 'in common use' today for self-defense." *Id.*  And the plain text of the Second Amendment contemplates not just the "keeping" of arms in the home, but also the "bear[ing] of arms" beyond it. *Id.* at 23–24.  Therefore, as with the petitioners in *Bruen*, "[t]he Second Amendment's plain text thus presumptively guarantees" to Young "a right to 'bear' arms in public for self-defense." *Id.* at 24.

2

Because "the Constitution presumptively protects" Young's right to carry arms in public for self-defense, Hawaii "must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 15.  Put differently:  since the Second Amendment guarantees to the people "a general right to public carry," the constitutionality of section 134-9 hinges on whether there was at the time of the ratification of the Second Amendment or the Fourteenth Amendment "a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense." *Id.* at 24, 29–30.  The government has the burden to show such a tradition. *Id.* at 15.

But Hawaii cannot meet its burden, because, as the Supreme Court held in *Bruen*, there was no such tradition. *Id.* at 29–30.  Nor was there a "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 30.  Historical

restrictions on public carry may have "limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms." *Id.* at 62. But such valid historical exceptions are quite the opposite of section 134-9, which flips the presumption by limiting public carry licenses to "an exceptional case."

A law-abiding citizen need not demonstrate a special need to exercise his or her right to carry arms in public for self-defense. *Id.* But like the New York law at issue in *Bruen*, section 134-9 requires ordinary citizens like Young to demonstrate an exceptional reason to obtain a public carry permit. Thus, section 134-9 violates the Fourteenth Amendment by "prevent[ing] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *See id.* at 63. *Bruen* admits of no other conclusion.

## III

The Second Amendment "'elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Id.* at 17 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 653 (2008)). The Supreme Court has thus admonished the lower courts that this right "demands our unqualified deference." *Bruen*, Slip. Op. at 17. But "may-issue" permitting schemes violate this Second Amendment right. Like all such schemes, Hawaii's "may-issue" permitting law, section 134-9, infringes the right of Young, a law-abiding responsible citizen, to carry a handgun in public for the purpose of self-defense. Young has indeed stated a claim that section 134-9 violates the Fourteenth

Amendment by depriving him of the right protected by the Second Amendment.

Our Court should say so. We are bound, now, by *Bruen*, so there is no good reason why we could not issue a narrow, unanimous opinion in this case. The traditional justifications for remand are absent here. The issue before us is purely legal, and not one that requires further factual development. The majority does not explain, nor can it justify, its decision to remand this case to the district court without any guidance. Yet in its terse order and unwritten opinion, the majority seems to reveal a hidden rule in our Circuit: Second Amendment claims are not to be taken seriously. I would prefer to apply the binding decisions of the Supreme Court to the case at hand.

Instead of remanding without explanation or justification, we should reverse the district court in an opinion holding that Young has stated a claim upon which relief may be granted, that section 134-9 is unconstitutional, and that the case must proceed accordingly in district court. If we issued such an opinion, we would ensure that *Bruen* is applied uniformly in our Circuit in future cases. And in this case, we would save the parties and the district court the time and expense of continuing to litigate issues that we could resolve easily.

Today we shy away from our obligations to answer the straightforward legal questions presented on appeal and to provide guidance to the lower courts in our Circuit. And in doing so, we waste judicial resources by sending the parties back to square one at the district court. The parties have waited a decade to resolve this litigation, and Young has waited over ten years to exercise his constitutional right to carry a handgun in public for self-defense. Because we opt

not to decide this simple case, we force Young to wait even longer.

Someday, Young will finally be vindicated. Someday, our Court must issue an opinion that respects the rights enshrined in the Second Amendment.

Until then: I respectfully dissent.